

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 16, 2013**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ERICKSON RETIREMENT | § | CASE NO. 09-37010-SGJ-11 |
| COMMUNITIES, LLC, *et al.*, | § | |
| | § | |
| DEBTORS.[1] | § | |
| | § | |
| | § | |
| DAN LAIN, TRUSTEE OF THE | § | |
| LIQUIDATING CREDITOR TRUST, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 11-03569-SGJ |
| | § | |
| UNIVERSAL DRYWALL LLC, | § | |
| | § | |
| DEFENDANT. | § | |

---

[1] The Debtors in these Chapter 11 cases were Erickson Retirement Communities, LLC, Ashburn Campus, LLC, Columbus Campus, LLC, Concord Campus GP, LLC, Concord Campus, LP, Dallas Campus GP, LLC, Dallas Campus, LP, Erickson Construction, LLC, Erickson Group, LLC, Houston Campus, LP, Kansas Campus, LLC, Littleton Campus, LLC, Novi Campus, LLC, Senior Campus Services, LLC, Warminster Campus GP, LLC, and Warminster Campus, LP.

**MEMORANDUM OPINION AND ORDER IN SUPPORT OF JUDGMENT AWARDING TRUSTEE $23,680.87 PURSUANT TO SECTIONS 547 AND 550 OF THE BANKRUPTCY CODE**

The above-referenced adversary proceeding (the "Adversary Proceeding") brought by Dan Lain as Trustee of the Liquidating Creditor Trust (the "Liquidating Trustee" or the "Plaintiff") involves an allegedly preferential transfer in the amount of $215,312.00 (the "Transfer") made by Erickson Construction, LLC, one of the debtors in the above-referenced administratively consolidated cases (the "Bankruptcy Case"), to a creditor, Universal Drywall LLC (the "Defendant"), within 90 days of the bankruptcy petition date (the "Preference Period"). The Adversary Proceeding originally sought avoidance of the Transfer under any of sections 547, 544 or 548 of the Bankruptcy Code,[2] and recovery of the Transfer under section 550 of the Bankruptcy Code.[3] The court held a trial in this matter on December 18, 2012 and the parties asked to submit post-trial written closing arguments.[4] Based on the evidence and arguments, the court will

---

[2] The court would note that the Liquidating Trustee only pursued the section 547 cause of action at the trial held on December 18, 2012.

[3] The Complaint also asked for disallowance of any proof of claim filed by the creditor/Defendant, unless and until the Defendant returns the Transfer to the Trustee.

[4] Specifically, the Defendant submitted its closing arguments on December 20, 2012 [DE # 61] and the Liquidating Trustee submitted its closing arguments on January 7, 2013 [DE # 62]. References herein to "DE # _" refer to the docket number at which a pleading or order is located in the docket maintained by the Bankruptcy Clerk in this Adversary Proceeding.

render a Judgment in favor of the Liquidating Trustee in the amount of **$23,680.87**.  The following constitutes the court's findings of fact and conclusions of law in support of the Judgment.  Where appropriate, any finding that should more appropriately be regarded as a conclusion shall be regarded as such, and *vice versa*.   The court reserves the right to supplement or amend these findings of fact and conclusions of law, as necessary.

## I.  INTRODUCTION

This court has jurisdiction in this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334 and 157.  This is a "core" proceeding in which the bankruptcy court can render final orders, pursuant to 28 U.S.C. § 157(b)(2)(B), (F), and (O).[5]  This ruling is issued pursuant to Federal Rule of Bankruptcy Procedure 7052.

## II.  FINDINGS OF FACT

A.   The Plaintiff in this Adversary Proceeding is a liquidating trustee who presides over a creditors trust for the above-referenced consolidated Chapter 11 Debtors (the "Debtors"), including Erickson Construction, LLC (the "Debtor"), pursuant to the Plan confirmed in the Bankruptcy Case on April 16, 2010. Section 6.4.4 of the Plan, and Article V, Sections 5.1 and 5.2 of an ancillary Trust Agreement, grant authority to the Liquidating

---

[5] No party has contested the bankruptcy court's authority to finally adjudicate this Adversary Proceeding.

-3-

Trustee, as a successor in interest, to pursue certain causes of action of the Debtors and to commence this Adversary Proceeding.

B.    The Defendant is a drywall construction company located at 320 Rockingham Road, Unit 8, Auburn, New Hampshire 03032.

C.    The Debtor and the Defendant were involved in a business relationship in which the Defendant was a subcontractor on the Debtor's Linden Ponds project, located in Hingham, Massachusetts, which was owned by Hingham Campus, LLC ("Hingham Campus"), an affiliate of the Debtors, pursuant to a "Subcontract Between Contractor and Subcontractor" (the "Subcontract").[6]   The Debtor served as the general contractor on the Linden Ponds project and Hingham Campus was the landowner and such relationship was governed by the "Prime Contract."[7] Specifically, under section 9.6.7 of the Prime Contract between Hingham Campus and the Debtor, "payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner."[8]   Stated another way, the Prime

---

[6] *See* Defendant's Exhibit B.

[7] *See* Plaintiff's Exhibit 10.

[8] *Id.*

-4-

Contract provided that Hingham Campus would pay funds to the
Debtor for work performed by subcontractors on the Linden Ponds
project, which were to be held by the Debtor for the benefit of
subcontractors (like the Defendant) and suppliers to the Linden
Ponds project.  Both the Subcontract and the Prime Contract
provide that each "shall be governed by the law of the place
where the Project is located," which would be the Commonwealth of
Massachusetts.[9]

    D.  The Debtor maintained only one traditional bank account
(the "Operating Account"), which included a corresponding
investment sweep account (the "Investment Sweep Account").[10]  The
Operating Account received funds from different landowners,[11]
other Debtors, other affiliate entities, and sometimes other
sources, which were all commingled together in the Operating
Account.[12]  The Operating Account was swept on a regular basis
and usually had a $0 balance, with all its funds being swept into
the Investment Sweep Account.[13]  All of the Debtor's funds were

---

[9] *See* Plaintiff's Exhibit 10 and Defendant's Exhibit B.

[10] *See* Plaintiff's Exhibit 14.

[11] "Landownders" refers to various affiliated entities throughout
the United States that owned senior living centers that were in
various stages of development.

[12] *Id.*

[13] *Id.*

in one of these two accounts at all times.[14]

   E.  The Defendant performed work on the Linden Ponds
project and prior to the Preference Period had been paid
$2,348,134 by the Debtor.[15]  On February 16, 2009, the Defendant
submitted a final requisition to the Debtor for payment in the
amount of $215,312.[16]

   F.  From January through September 2009, Hingham Campus
(again, the landowner) had paid the Debtor $2,058,660.03 for work
completed on the Linden Ponds project.[17]  On March 20, 2009,
Hingham Campus made its largest payment to the Debtor in the
amount of $1,022,503.15 by transfer from Hingham Campus' PNC Bank
account no. ****8080 into the Operating Account.[18]

   G.  Almost 6 months later, the Debtor transferred
$215,312.00 to Defendant as set forth below:

| Application Date | Application No. | Amount | Check Date | Payment Cleared |
|---|---|---|---|---|
| 2/16/2009 | LPHEC10 REQ # 14 | $215,312.00 | 9/23/2009 | 9/28/2009 |

The Transfer was made via a check numbered 72747 from the

---

[14] *Id.*

[15] *See* Defendant's Exhibits C & E.

[16] *See* Defendant's Exhibit C.

[17] *See* Defendant's Exhibit P.

[18] *Id.*

-6-

Operating Account.[19]

H. Shortly after the Transfer, the Debtor filed for bankruptcy on October 19, 2011 (the "Petition Date"). On October 14, 2011, the Liquidating Trustee commenced this Adversary Proceeding against the Defendant seeking, in pertinent part, to avoid the Transfer pursuant to section 547 of the Bankruptcy Code and recover the Transfer pursuant to section 550 of the Bankruptcy Code.

I. On June 8, 2012, the Defendant filed a Motion for Summary Judgment seeking judgment for the Defendant in the Liquidating Trustee's preference action for three reasons: (1) the Transfer was impressed with a trust, such that the Debtor had legal, but no equitable title in the funds transferred; (2) the Debtor was not insolvent at the time of the Transfer; and (3) the Defendant had a new value defense.[20] The Defendant argued that there was no genuine issue of material fact as to these three facts and that, ultimately, the Liquidating Trustee could not meet his burden of proof on certain basic elements of his section 547 claim, including that the Transfer was not of an interest of the Debtor in property and that the Debtor was insolvent at the time of the Transfer. As to the requirement under section 547 that the alleged transfer be of an interest of the debtor in

---

[19] *See* Plaintiff's Exhibit 1 & 5.

[20] *See* DE ## 29-30.

property, the Defendant cited to Massachusetts case law (which applies in this Adversary Proceeding)[21] that stated where a trustee charged with holding trust funds, on his own action, commingles trust funds with personal funds, the trustee bears the ultimate burden at trial on establishing the ownership of the funds at issue.[22]   Thus, the Defendant argued that, because it had shown that a trust had been established as a matter of law, the burden at trial on the element of whether the Transfer was of property of the Debtor would ultimately shift to the Liquidating Trustee and require the Liquidating Trustee to use a tracing analysis to show that the Transfer was made with non-trust funds.

---

[21] One must start with state law to determine whether "property of the debtor" was, indeed, transferred to a defendant or not.  *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interest in property is involved in a bankruptcy proceeding.").  It is undisputed that Massachusetts law applies with regard to the property/funds transferred to the Defendant.  *See* n.9 herein.  It is also undisputed that under Massachusetts common law, a trust was imposed on the funds from the landowner, Hingham Campus, to the Debtor pursuant to the terms of the Prime Contract.  *Cooney v. Montana*, 347 Mass. 29, 34-35 (1964).  It is further undisputed that the Debtor had only one bank account—the Operating Account.  The evidence was that the Debtor was paid a significant amount of funds in the months leading up to the Transfer ($2,058,660.03), Defendant's Exhibit P, by Hingham Campus for work performed on the Linden Ponds project, prior to the Transfers and that such payments from Hingham Campus went into the Operating Account.  Thus, the funds that were paid from Hingham Campus to the Debtor into the Operating Account were held in trust for the benefit of the Defendant and for other subcontractors on the Hingham Campus project.

[22] *See, e.g., McGarry v. Chew*, 885 N.E.2d 174, at *3 (Mass. App. Ct. 2008); *see also People's Nat'l Bank v. Mulholland*, 228 Mass. 152, 158 (1917).

After hearing these arguments, the court made an oral bench ruling and found that:

> the undisputed evidence initially seems to establish the existence of all of the elements of a Section 547 preference. But Defendant has put forth evidence and law suggesting that funds transferred from Hingham, the landowner, to Erickson Construction, the Debtor/contractor, would have been subject to a statutory and contractual trust. The Court does agree with Defendant that the contract at issue here and Massachusetts law established a trust with regards to the funds received by or paid to Erickson Construction from Hingham for work properly performed by Universal Drywall. And the Court agrees with Universal that the commingling of these funds or lack of segregation of the funds did not defeat the trust. But this Court is of the opinion that tracing would still be necessary. Once the trust is established, as it has been here, the burden shifts to the Trustee to show through tracing that the trust funds had in fact vanished.

> Obviously, this all goes to the issue of whether property of the Debtor was transferred or not, which is the first basic element of the preference. Here, the Court believes that the Cass affidavits have met the standard necessary upon the burden-shifting to show that a genuine issue of disputed fact exists as to whether trust funds were dissipated or not, were used to pay Universal or not. He presents evidence that the balance in the Erickson Construction operating account slipped down to approximately $19,000 immediately before the transfer occurred with respect to Universal.

> But the Court is not convinced from this evidence that this is the end of the analysis. The Court agrees with Defendant that it should be able to see the full funds flow from Hingham to Erickson Construction and to the investment account in which funds were swept back and forth, to test the information in the Cass affidavit.

> To be clear, Trustee has in this summary judgment context met his burden to show there is a disputed material fact question. The Court views the Cass affidavits in the light most favorable, and they would suggest that approximately $19,000 of Universal's trust

funds remained at the time it was paid approximately $215,000. But this may not suffice at trial. The Court would likely need to see the full document trail, or at least have more evidence from Mr. Cass.

As to the two other issues, first, the new value defense, this defense has not been established as a matter of law. There are genuine issues of material fact whether Erickson Construction realized any benefit from the release of liens on the Hingham property or not.

As to the insolvency issue, the Plaintiff/non-movant has met his burden, once Defendant put forth some evidence challenging Erickson Construction's insolvency through the Rundell affidavit, that in fact Erickson Construction was insolvent at the time of the transfer, such evidence being the schedules of assets and liabilities that were filed in the Erickson Construction bankruptcy case and evidence of actual market values of assets versus book value. Again, there are contested issues of fact.

For all of these reasons, summary judgment is denied at this time.[23]

In other words, the court found that the Defendant had established as a matter of law that a trust had been imposed on the funds transferred from Hingham Campus to the Debtor, and as such, the Liquidating Trustee, pursuant to Massachusetts law, would have the ultimate burden of tracing said funds to show that the Transfer was comprised of an interest of the Debtor in property.  Additionally, the court found that there were genuine issues of fact as to the Defendant's new value defense and whether the Debtor was insolvent at the time of the Transfer.

J.  A trial on these remaining issues was held on December

---

[23] See DE # 43, pgs. 28-31.

18, 2012 (the "Trial").   At the Trial, the Defendant abandoned any further pursuit of its "new value defense," and the Liquidating Trustee and the Defendant stipulated that all the elements of a preference under section 547(b) of the Bankruptcy Code had been established by the Liquidating Trustee other than whether the Transfer was of an interest of the Debtor in property and whether the Debtor was insolvent at the time of the Transfer. Thus, the Liquidating Trustee and the Defendant stipulated that, if the Liquidating Trustee could establish these two elements, the Transfer would be avoidable.

<u>IV.   CONCLUSIONS OF LAW</u>

1.   Section 547(b) of the Bankruptcy Code states that a transfer of property may be avoidable as a "preference" only if the following elements are established by the plaintiff:  (a) the transfer was "of an interest of the debtor in property"; (b) the transfer was "to or for the benefit of a creditor"; (c) the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer"; (d) it was made while the debtor was insolvent;[24] (e) it was made on or within 90 days before the bankruptcy petition date (for non-insider creditors; for insiders, the reach-back period is one year); and (f) the transfer enabled the creditor to receive more than such creditor

_____

[24]   Insolvency is presumed to have existed on and during the 90 days preceding the date of the filing of the debtor's bankruptcy petition.   11 U.S.C. § 547(f).

-11-

would have received in a hypothetical chapter 7 bankruptcy case, if the prepetition transfer had not been made.[25]

2.   Here, the Transfer to the Defendant was made within 90 days of the Petition Date (the Debtor filed bankruptcy on October 19, 2009; the 90th day before the date of the filing of the bankruptcy case was July 21, 2009). Moreover, the Defendant was a creditor of the Debtor at the time of receiving the Transfer, and the Transfer was on account of an antecedent debt owed by the Debtor. Finally, the Defendant's receipt of the Transfer enabled it to receive more than it would under a hypothetical chapter 7 bankruptcy case. Thus, the only two issues that remain in this Adversary Proceeding are: (1) whether the Transfer was of an interest of the Debtor in property; and (2) whether the Debtor was insolvent at the time of the Transfer.

**A.   Was the Transfer of "an Interest of the Debtor in Property"?**

3.   This court previously held, in resolving the Defendant's Motion for Summary Judgment, that the Debtor held ***in trust***, for the benefit of the Defendant, funds it received from Hingham Campus relating to the Linden Ponds project on which the Defendant was working.[26] Moreover, the court held that once the trust had been established by the Defendant (as it has been here), then pursuant to Massachusetts law, the burden shifts to

---

[25] 11 U.S.C. § 547(b) & (g).

[26] *Cooney v. Montana*, 347 Mass. 29, 34-35 (1964).

-12-

the Liquidating Trustee to show, through tracing, that the trust funds had vanished.

4. Here, the parties have both agreed that, in order for the Liquidating Trustee to properly trace the commingled funds, the court must utilize the lowest intermediate balance test. Under the lowest intermediate balance test, if the amount on deposit in commingled funds (which has occurred in this case) has at all times equaled or exceeded the amount of the trust, the trust's funds will be returned in their full amount.[27] In other words, the lowest intermediate balance test creates a legal fiction that, when funds are withdrawn from a trust account, non-trust funds are withdrawn first.[28] Under this test, if the balance of cash on hand on any interim day was less than the amount of the trust fund claims, then the trust fund claims are limited to that "lowest intermediate balance."[29] Moreover, the "lowest intermediate balance test" is applied to all of the debtor's accounts taken together.[30] As stated previously, the basis for this trust relationship was the Prime Contract between Hingham Campus and the Debtor and Massachusetts law. Under the

---

[27] *Int'l Beauty Prods., LLC v. Beveridge (In re Beveridge)*, 416 B.R. 552, 572 (Bankr. N.D. Tex. 2009).

[28] *Id.*

[29] *Al Copeland Enters., Inc. v. Texas (In re Al Copeland Enters., Inc.)*, 991 F.2d 233, 235 n. 1 (5th Cir. 1993).

[30] *United States v. McConnell (In re Flying Boat, Inc.)*, 258 B.R. 869, 876 (N.D. Tex. 2001).

-13-

Prime Contract the Debtor was required to hold funds transferred from Hingham Campus for subcontractors and vendors who performed work on the Linden Ponds project.  The only parties to the Prime Contract were the Debtor and Hingham Campus; therefore, this specific provision only creates a trust relationship between the Debtor and the subcontracts and vendors on the Linden Ponds project.  There is no trust relationship between any of the other Debtors and the Linden Ponds' subcontractors and vendors because none of the other Debtors were party to this Prime Contract.  Thus, the court may only consider the lowest intermediate balance of the Debtor's Operating Account and Investment Sweep Account combined.

5.   At the Trial, the Liquidating Trustee's expert, Mr. Thomas, performed a tracing analysis of the funds Hingham Campus deposited into the Debtor's Operating Account and the Investment Sweep Account (collectively, the "Accounts") and provided a summary of that tracing analysis.[31]  At the Trial, Mr. Thomas testified that the lowest intermediate balance of the Accounts before the Transfer to Defendant was $191,631.13, which occurred on August 26, 2009.[32]  With this evidence, the Liquidating Trustee testified that the court should then apply the lowest intermediate balance test.  While this would seem to result in

---

[31] *See* Plaintiff's Exhibit 13.

[32] *Id.*; *see also* Defendant's Exhibit M.

-14-

the court finding that $191,631.13 was the amount of trust funds
remaining in the Accounts prior to the Transfer, requiring the
Defendant to turnover any of the Transfer in excess of this
amount, the Liquidating Trustee's expert suggested, essentially,
that the court should further modify the fiction created by the
lowest intermediate balance test with a dose of reality.
Specifically, the Liquidating Trustee's expert testified that
another subcontractor on the Linden Ponds project (who would have
the same trust fund argument as the Defendant) was actually paid
$171,818.95 on the same day as the Defendant, and this
subcontractor's check cleared first (on September 25, 2009—three
days before the Defendant's check).  Thus, the Liquidating
Trustee's expert testified that the court should treat this other
subcontractor as a beneficiary of the very same trust res, and
deem the trust res to have been depleted by $171,818.95 so that,
essentially, there was only $19,812.18 of trust funds
($191,631.13 minus $171,818.95) available to pay the Defendant
the $191,631.13 (on September 28, 2009 when the Defendant's check
cleared).[33]  Thus, the Liquidating Trustee's expert testified
that only $19,812.18 of the payment to the Defendant would have
been trust funds and the remainder would have been property of
the Debtor's estate and recapturable as a preference.

     6.   While certainly logical, the court cannot agree with

---

[33] *Id.*

the Liquidating Trustee's application of tracing here (in a fashion that is, essentially, a hybrid of the lowest intermediate balance test and literal tracing).  The lowest intermediate balance fiction is just that—a fiction—and it is less than perfect.  When there has been a commingling of fungible funds from multiple sources into one or two general bank accounts—and multiple vendors get paid from these commingled fungible funds (and some of these vendors were entitled to have their funds held in trust and some were not)—the lowest intermediate balance exercise is the best we can do in such circumstances.  The Liquidating Trustee asks the court (as indicated earlier) to inject some measure of reality into the fiction and treat another Hingham Campus vendor whose check cleared, just prior to the Defendant's, as also having been paid from the same trust res first.  While that argument has some rational appeal, the court believes that every individual vendor/subcontractor is entitled to have the lowest intermediate balance test applied to them in isolation.[34]  In other words, the procedure works as follows: (a) identify whether there was a trust res (here, there was

---

[34] Moreover, the court would note that the Debtor's Accounts were up to a balance of over $4.9 million on September 25, 2009 and the days thereafter.  *See* Defendant's Exhibit M.  Under the lowest intermediate balance test, the court is required to treat all payments out of the Accounts as having come from funds **other** than the Defendant's trust funds.  Thus, we should treat the other subcontractor's $171,818.95 payment on September 25, 2009 as having come out of a portion of the $4.9 million of funds on hand that day **other** than the $191,631.13 of trust funds that we know should be treated as still having been on hand as of August 26, 2009.

$2,058,660.03 paid by Hingham Campus to the Debtor between January 2009 through September 2009 for work done on the Linden Ponds project prior to the payment to the Defendant); (b) identify the lowest intermediate balance in the the debtor's accounts prior to the claimant being paid (here, $191,631.13); and (c) treat that lowest intermediate balance as the remaining trust funds, which belong to the claimant.

7.    Thus, applying the lowest intermediate balance test, the court finds that the Transfer, a total of $215,312.00, was comprised of $191,631.13 of trust funds and $23,680.87 of funds that were of "an interest of the Debtor in property." Thus, to the extent the Liquidating Trustee meets its burden on the insolvency issue discussed below, the Liquidating Trustee would only be entitled to a judgment in the amount of **$23,680.87**.

**B.    Was the Debtor Insolvent at the time of the Transfer**?

8.    A debtor is presumed insolvent on and during the 90 days preceding the petition date.[35] The Defendant may rebut this presumption only if it produces "non-speculative evidence" to support a finding of solvency.[36] Under Fifth Circuit case law, "an income statement showing positive operating income and an expenditures summary showing a small net loss" is too

---

[35] *See* 11 U.S.C. § 547(f).

[36] *Faulkner v. Kornman (In re Heritage Org., LLC)*, 413 B.R. 438, 500 (Bankr. N.D. Tex. 2009).

-17-

speculative to rebut the Bankruptcy Code's presumption of insolvency.[37]

9. The only evidence Defendant provided in rebuttal of the Bankruptcy Code's presumption of insolvency was the First Day Affidavit of Paul Rundell, who was retained as the chief restructuring officer for the Debtors.[38] In this affidavit, Mr. Rundell stated that:

> As of **September 30, 2009** [which was two days after Defendant's Transfer cleared and 19 days before the Petition Date], on a **book value basis**, Erickson Construction had approximately $22.5 million in assets and $17.8 million in liabilities. Erickson Construction's main assets consist of: (i) approximately $4.4 million in cash and cash equivalents; (ii) approximately $12.6 million in receivables; and (iii) approximately $1.2 million in property and equipment. Erickson Construction's main liabilities are: (i) its liability as a borrower under the Corporate Revolver; and (ii) approximately $13.8 million in construction payables and accrued expenses.[39]

Thus, the Defendant's only evidence to rebut the statutory presumption of insolvency is based on this prior sworn statement of a court-approved professional concerning **book value** of the Debtor's assets at a point in time around the Transfer. Just as "an income statement showing positive operating income and an expenditures summary showing a small net loss" is too speculative

---

[37] *Id.* (citing *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba)*, 416 F.3d 394, 403 (5th Cir. 2005)).

[38] *See* Defendant's Exhibit L, pg. 8.

[39] *Id.* (emphasis added).

-18-

to rebut the Bankruptcy Code's presumption of insolvency,[40] so, too, is this statement of a court-approved professional as to book value of assets "legally insufficient to rebut the statutory presumption that the [debtor] was insolvent" because, specifically, there is no evidence that the book value on or about September 30, 2009 reflected the fair value of the debtor's assets.[41] Generally, balance sheets do not use the fair valuation standard [*i.e.,* they use book values, which often bear no relationship to actual market values], and "without fair valuation of the Debtor's assets and the sum of the Debtor's debts," there is not sufficient evidence to rebut the statutory presumption of insolvency.[42] The Defendant provides no evidence that the book value reflects the fair value of the Debtor's assets and liabilities, and the Liquidating Trustee's expert, Mr. Thomas, specifically testified that book value is not the same thing as fair value. Thus, the court believes that the Defendant's evidence is legally insufficient to rebut the statutory presumption of insolvency under section 547(f) of the Bankruptcy Code.

    10. However, even if the Rundell affidavit was enough to

---

[40] *Id.* (citing *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba)*, 416 F.3d 394, 403 (5th Cir. 2005)).

[41] *Id.* at 501.

[42] *Id.* (quoting *Devan v. The CIT Group (In re Merry-GoRound Enters., Inc.)*, 229 B.R. 337, 342 (Bankr. D. Md. 1999)).

possibly shift the presumption, the Liquidating Trustee produced evidence in the form of the Debtor's bankruptcy schedules to show that the assets of the Debtor were much lower than its liabilities as of the October 19, 2009 Petition Date.[43] Specifically, the schedules show that the Debtor had $4,264,408.41 in assets and $11,747,050.24 in liabilities at the time it filed for bankruptcy (these numbers were obviously quite different from the Rundell Affidavit, whose information was based on a date 19 days before the Debtor filed for bankruptcy; there was no evidence that explained the differences, except for idle speculation that a receivable that the Rundell affidavit took into account might not have been included in the Bankruptcy schedules).[44]   In any event, the Bankruptcy schedules, coupled with the Liquidating Trustee's expert testimony, was enough to meet the Liquidating Trustee's burden to show that the Debtor was insolvent at the time of the Transfer.

## V.   Conclusion

In summation, the Liquidating Trustee has met all the elements of its preference claim under section 547(b) of the

---

[43] At least one court has held that the verified schedules of a bankrupt, containing a presumptively complete list of assets and liabilities, are admissible as evidence of the bankrupt's insolvency at the time of a particular transaction, where, as here, the transaction occurred shortly before the bankruptcy and without opportunity for any great change in either property or debts. See *In re Mandel*, 127 F. 863, 865 (D.C.N.Y. 1903), *aff'd*, 135 F. 1021 (2d Cir. 1905).

[44] *See* Plaintiff's Exhibit 6.

Bankruptcy Code as to **$23,680.87** of the Transfer.   It is therefore,

**ORDERED** that the Liquidating Trustee shall have a judgment allowing for avoidance of $23,680.87 of the Transfer, pursuant to section 547(b) of the Bankruptcy Code, and recovery of the same amount pursuant to section 550 of the Bankruptcy Code.   Counsel for the Liquidating Trustee shall separately upload a form of Judgment consistent with this court's Memorandum Opinion above.

**###END OF MEMORANDUM OPINION AND ORDER###**